UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, ET AL.,

    Plaintiffs,                                     Case No. 05-70869

v.                                                Honorable Nancy G. Edmunds

COL. TADARIAL STURDIVANT, ET AL.,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

This case presents the Court with questions about the conflicts between Michigan's Sex Offender Registry Act and its Holmes Youthful Trainee Act, and the constitutional protections available to those falling under the provisions of both. For the reasons discussed below, the Court GRANTS Defendants' Motion for Summary Judgment.

I.    Background

Michigan's Holmes Youthful Trainee Act ("HYTA"), Mich. Comp. Laws § 762.11 *et seq.*, which has been in effect for almost forty years, provides as follows:

> [I]f an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-first birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee.

*Id.* Upon successful completion of youthful trainee status, the court's disposition is expunged and the defendant's record is sealed from public inspection. *Id.* § 762.14(4). An "individual assigned to the status of youthful trainee shall not suffer a civil disability or loss

of right or privilege following his or her release from that status because of his or her assignment as a youthful trainee," *Id.* § 762.14(2), and need not disclose such information when asked whether he or she has a criminal record. 1973-74 Mich. Op. Att'y Gen. 53 (Op. 4774, June 15, 1973). As the statute makes clear, a defendant whose case has been expunged is not technically "convicted"; rather, while a guilty plea is accepted for purposes of HYTA, it is never entered unless the court revokes youthful trainee status. *Id.* § 762.12.

Michigan's Sex Offender Registration Act ("SORA"), Mich. Comp. Laws § 28.721, was first adopted in 1994 to create a comprehensive law enforcement database of known sex offenders. SORA has seen several amendments, most notably to provide for a Public Sex Offender Registry ("PSOR"). The PSOR provides to the general public, in printed form and on an internet site,[1] a scaled-back version of the law enforcement database. The PSOR contains the names, aliases, addresses, physical descriptions, birth dates, photographs, and specific offenses for all convicted sex offenders in the state of Michigan. *Id.* § 28.728(4)(A).

When the legislature enacted SORA, it also amended HYTA such that individuals assigned to youthful trainee status were required to register as sex offenders. 1994 Mich. Pub. Acts 286. Therefore, despite HYTA's provision that "[u]nless the court enters a judgment of conviction against the individual . . . , all proceedings regarding the disposition of the criminal charge and the individual's assignment as youthful trainee shall be closed to public inspection . . . .", Mich. Comp. Laws § 762.14(4), PSOR includes the information of those who, subject to HYTA, were never technically "convicted."

---

[1]*Available at* http://www.mipsor.state.mi.us/.

In 2004, HYTA was again amended. It now provides that "[a]n individual assigned to youthful trainee status *before October 1,* 2004 for a listed offense enumerated in section 2 of the sex offenders registration act . . . is required to comply with the requirements of that act." *Id.* § 762.14(3) (internal citations omitted). It further provides that sex offenders are no longer eligible for youthful trainee status, with the exception of those who have violated the so-called "Romeo and Juliet" laws, which apply to third- or fourth-degree criminal sexual conduct with somebody between the ages of 13 and 16. *Id.* §§ 762.11(2)(d), (e) (citing Mich. Comp. Laws §§ 750.520d(1)(a), 750.520e(1)(a)). These individuals may petition a court for an order waiving the registration requirement, thus preventing their offense information from ever being released to the public. *Id.* §§ 28.728c(15), 28.728d. Some others may petition a court for removal of their offense information from the registry.

Thus, for purposes of disclosure, HYTA now distinguishes between several general classes of youthful trainees. First are those who were not involved in sex offenses, whose records are fully closed to the public. Second are those who were involved in any sex offense prior to October 1, 2004, who appear on the sex offender registry. Third are those who were involved in the more serious sex offenses after October 1, 2004, who also appear on the sex offender registry. Finally, there are those who were involved in "Romeo and Juliet" crimes after October 1, 2004, who do not appear on the sex offender registry.

Plaintiff John Doe, who seeks to represent a class, was sentenced under HYTA on or before October 1, 2004 and successfully completed his youthful trainee status. Nevertheless, Doe remains subject to SORA. Plaintiff Samuel Poe, who also seeks to

represent a class, was sentenced under HYTA on or before October 1, 2004 but has not yet completed his youthful trainee status.

Plaintiffs' first cause of action states that they "have [a] constitutionally protected liberty interest and fundamental right to be left alone by not being falsely designated as currently dangerous sex offenders who pose a threat to the public safety, since they have not been convicted of a crime and are entitled to a second chance under [HYTA]. The liberty interests of the Plaintiffs and members of the class arise under the Fourteenth Amendment[] to the United States Constitution." Pl.s' Compl. 19-20.

Plaintiffs' second cause of action states that their constitutional rights are violated by the continuing "public disclosure of information, which is not made public under HYTA and thus leads to an absurd result that is not in accord with the plain language and legislative goals of the HYTA." *Id.* at 20. Plaintiffs argue that this public disclosure "violates [their] right to Substantive Due Process under the Fourteenth Amendment of the United States Constitution, which forbids the government from infringing upon their fundamental rights." *Id.* at 19-20.

Plaintiffs' third cause of action states that SORA violates their "right to Equal Protection under the Fourteenth Amendment of the United States Constitution, which forbids any state from treating an individual or class of individuals differently from the way that it treats other individuals or classes in like circumstances." *Id.* at 22.

Defendants bring the present motion based on both Rule 12(b)(6) and Rule 56. Defendants first argue that Plaintiffs' amended complaint should be stricken or dismissed, as it was filed after a response without appropriate leave of the court. Secondly, Defendants argue that the PSOR classification system does not violate procedural or

substantive due process, as it is fair and does not implicate a protected liberty or property interest. Finally, Defendants argue that Plaintiffs' equal protection claim fails, as Plaintiffs are not members of a protected class, and the PSOR is rationally related to a legitimate government interest.

Along with Plaintiffs themselves, *amicus curiae* American Civil Liberties Union Fund of Michigan ("ACLU") has filed a brief in response to Defendants' motion.

III.   Standard of Review

If, pursuant to a 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b). In opposition to Defendant's motion, Plaintiffs' counsel has presented the affidavits of twenty different plaintiffs, and amicus curiae American Civil Liberties Union has presented one additional affidavit. This case should therefore be approached as a motion for summary judgment.

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which a jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

III. Analysis

    A.  Amended Complaint

On April 18, 2005, this Court issued in this case an Order "Dismissing [Plaintiffs'] State Law Claims and Requiring Filing of Amended Complaint." The Court stated that Plaintiffs' original complaint "fail[ed] to reveal the grounds for Plaintiffs' First and Fourth Amendment claims," that it was "impossible to discern any grounds for Plaintiffs' Ninth Amendment claim," and that it was "impossible to discern any constitutionally protected property interest from Plaintiffs' allegations." The court ordered Plaintiffs to file an amended complaint or face dismissal on the claims "under the First, Fourth, Ninth, and Fourteenth (based on constitutionally-protected property interests) Amendments for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)."

Plaintiffs' amended complaint sets out the claims more clearly. Plaintiffs have not realleged their initial claims under the First, Fourth, and Ninth Amendments. Those claims, as Plaintiffs likely expect, are dismissed. In addition to dropping some claims, however, Plaintiffs have added claims that were not previously included. Defendants now contend that because they filed an answer to the initial complaint, Federal Rule of Civil Procedure 15(a) required Plaintiffs to obtain leave of the Court before amending their complaint to assert new claims.

Plaintiffs have merely realleged their Fourteenth Amendment claim in greater detail. They have alleged a substantive violation of the Due Process Clause and a violation of the Equal Protection Clause. In short, they have done exactly what this Court asked them to do, and no additional leave was necessary.

B. Substantive Due Process[2]

In *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), the United States Supreme Court addressed an issue similar to the present case. There, the plaintiffs had objected to Connecticut's sex offender registry, which is similar to Michigan's. The plaintiffs alleged that the registry violated their due process rights because it did not provide them a hearing to determine their dangerousness. *Id.* at 3. This, the plaintiffs contended, had implicated a constitutionally protected "liberty interest" because it both stigmatized

---

[2]For purposes of clarity, the Court considers Plaintiffs' first and second claims together. The first claim does not identify the source of the right that Plaintiffs claim, but the "liberty interest" they discuss is best viewed as one of the "substantive" rights provided by the Due Process Clause of the Fourteenth Amendment. Furthermore, in their briefs, both Plaintiffs and the ACLU concede that the United States Supreme Court foreclosed procedural due process arguments against Michigan's sex offender registry in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003).

7

them and imposed "extensive and onerous" registration obligations. *Id.* at 6. The Court concluded that the plaintiffs were not entitled to hearings, because under Connecticut's statutory scheme, the dangerousness of a particular offender is irrelevant. "In short, even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed." *Id.* at 7 (emphasis in original). The Court concluded by stating,

> It may be that respondent's claim is actually a substantive challenge to Connecticut's statute 'recast in 'procedural due process' terms.' Nonetheless, respondent expressly disavows any reliance on the substantive component of the Fourteenth Amendment's protections, and maintains, as he did below, that his challenge is strictly a procedural one . . . . Because the question is not properly before us, we express no opinion as to whether Connecticut's [sex offender registry law] violates principles of substantive due process.

*Id.* at 8 (internal citations omitted). It appears that Plaintiffs are attempting to litigate the issue that the Supreme Court explicitly left open.

Plaintiffs have overlooked, however, that the Sixth Circuit Court of Appeals has already ruled on many of their claims. In *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1998), the plaintiff challenged Tennessee's sex offender registry on the grounds that it "deprive[d] him of alleged constitutional rights of privacy and employment, and the right to be free from stigma, without due process of law." *Id.* at 478.

Significantly, the plaintiff in *Cutshall*—a case predating *Connecticut Department of Public Safety v. Doe*—relied "on procedural due process grounds." *Id.* But unlike *Doe*, which expressly avoids the issue of substantive due process, *Cutshall* rests largely on a substantive due process analysis. For example, the opinion discusses at length the alleged

8

violation of the plaintiff's fundamental right to privacy, a right which has been described by the Supreme Court—in a case relied upon by *Cutshall*—as a substantive due process right:

> While there is no "right of privacy" found in any specific guarantee of the Constitution, the Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees and thereby impose limits upon government power. *See Roe v. Wade*, 410 U.S. 113, 152-153 (1973) . . . . *[O]ur other "right of privacy" cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment.* In *Roe* the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). The activities detailed as being within this definition . . . relat[e] to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.

*Paul v. Davis*, 424 U.S. 693, 712-13 (1976) (emphasis added). Thus, while *Cutshall* does not explicitly rely on substantive due process grounds, a fair reading of that case shows that the analysis applies to substantive as well as procedural due process claims.

The issues in *Cutshall* are closely related to those presented by this case, and the Sixth Circuit's analysis mirrors that of the parties to this action. Just like Defendant and the ACLU in the present case, the Sixth Circuit in *Cutschall* recognized that "the Due Process Clause is implicated only when state conduct alters 'a right or status previously recognized by state law.'" *Id.* at 479 (quoting *Paul*, 424 U.S. at 711). "This has come to be known as the 'stigma-plus' test . . . . To succeed in establishing a protected liberty interest, a plaintiff must show that the 'governmental action taken . . . deprived the individual of a right previously held under state law.'" *Id.* (quoting *Paul*, 424 U.S. at 708). After analyzing the interests that the plaintiff was alleging had been deprived—the potential "plus" factors—the *Cutshall* court rejected the plaintiff's arguments that the sex offender registry itself constituted a form of punishment, *id.*, that the plaintiff had difficulty finding employment, *Id.*,

9

and that the registry infringed on the plaintiff's fundamental right to privacy. *Id.* at 480. Curiously, Plaintiffs in the present case allege the deprivation of the same interests. *Cutshall* forecloses Plaintiff's arguments.

Even if *Cutshall* did not extend to substantive due process allegations, the case of *Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005), unquestionably does. There, the Eleventh Circuit was presented with a complaint which, like Plaintiffs', relied explicitly and exclusively on substantive due process rights.

The court first discussed the history of the due process clause, recognizing that the "substantive component protects fundamental rights that are so 'implicit in the concept of ordered liberty' that "neither liberty nor justice would exist if they were sacrificed." *Id.* at 1342-43 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)). Previously recognized fundamental rights include "'the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.'" *Id.* at 1243 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). As the court explained, however, the Supreme Court has been "reluctant to expand substantive due process by recognizing new fundamental rights." *Id.*

On this background, the court turned to facts at issue:

> The Appellants appear to make broad claims that the Sex Offender Act infringes their liberty and privacy interests, particularly Appellants assert that the Sex Offender Act infringes their "rights to family association, to be free of threats to their persons and members of their immediate families, to be free of interference with their religious practices, to find and/or keep any housing, and to a fundamental right to find and/or keep any employment." Despite Appellants' broad framing of their rights in this case, however, we must endeavor to create a more careful description of the asserted right in order to analyze its importance.
>
> . . .

> [T]he right at issue here is the right of a person, convicted of "sexual offenses," to refuse subsequent registration of his or her personal information with Florida law enforcement and prevent publication of this information on Florida's Sexual Offender/Predator website.
>
> . . .
>
> Though the Supreme Court has not addressed whether substantive due process invalidates sex offender registration statutes . . . , we can find no history or tradition that would elevate the issue here to a fundamental right. In fact, the case law we have found supports the contrary conclusion. We can certainly understand how a person may be shunned by a person or group that discovers his past offense. However, a state's publication of truthful information that is already available to the public does not infringe the fundamental constitutional rights of liberty and privacy.

*Id.* at 1343-1345 (internal citations omitted). Based on this finding, the court went on to analyze the plaintiffs' claims under a rational basis standard, and held that the state's sex offender registry satisfied this low threshold. *Id.* at 1345-46.

*Doe v. Moore* lumps several "fundamental rights" together into one claimed right—the right to liberty and privacy against the state's wishes to publish information on a sex offender registry. The court found that there is no such right, largely on the basis that the state was only publishing "truthful information that is already available to the public." *Id.* at 1345.

One obvious distinction between *Doe v. Moore* and the present case is that here, the state is not, technically, publishing truthful information, as Plaintiffs have not in fact been "convicted" of sex offenses. Even putting aside the parties arguments about the accurate definition of the word "convicted,"[3] there remains a problem with Michigan's scheme: The

---

[3]This seems to be a question much better suited to state court review. Indeed, the Michigan Court of Appeals has held that "while MCL 762.14(2) provides that the assignment of an individual to youthful trainee status does not result in a conviction, for purposes of the SORA, assignment to youthful trainee status, in fact, constitutes a

11

information published about Plaintiffs would not otherwise be publicly available. Thus, this case presents a unique issue, as the ACLU correctly points out: "[I]n every other case to date involving sex-offenders' due process or equal protection challenges to the public notification requirements of the registry, the offenders['] privacy claims failed only because the registry merely served as a collection point for already publicly available information." Br. of ACLU 9 (citing *Cutshall*, 193 F.3d 466; *Akella v. Dep't of State Police*, 67 F. Supp. 2d 716, 728-29 (E.D. Mich. 1999); *Lanni v. Engler*, 994 F. Supp. 849, 855-56 (E.D. Mich. 1998)). There is a certain logical sense to the argument that Plaintiffs may have a greater interest in privacy than the typical sex offender registrants, since their records would not otherwise be available to the public.

This Court has found no authority, however, and Plaintiffs have provided no authority, to support such a contention. Furthermore, the Sixth Circuit made clear in *Cutshall* that the constitutional right to privacy is exceedingly limited in its scope:

> Given the Supreme Court's and this court's narrow view of the federal constitutional right of privacy, we reject Cutshall's claim that the [sex offender act] infringes on this asserted right. The Constitution does not provide Cutshall with a right to keep his registry information private, and the [sex offender act] does not impose any restrictions on his personal rights that are fundamental or implicit in the concept of ordered liberty, such as his procreative or marital rights.

193 F.3d at 481. In light of this "narrow view of the federal constitutional right of privacy," *id.*, this Court is in no position to recognize an entirely new substantive due process right.

---

conviction." *People v. Rahilly*, 635 N.W.2d 227, 231 (Mich. Ct. App. 2002).

Because no fundamental right is implicated, this Court will review the statute under the low threshold of the rational basis test, which asks whether the law is "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997).

C.  Equal Protection

"[T]he Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). In *Connecticut v. Doe*, Justice Souter pointed out in a concurring opinion that "[t]he line drawn by the legislature between offenders who are sensibly considered eligible to seek discretionary relief from the courts and those who are not is, like all legislative choices affecting individual rights, open to challenge under the Equal Protection Clause." 538 U.S. at 10 (Souter, J., concurring) (internal citations omitted). There are two distinctions at issue in the present case, both of which, Plaintiffs and the ACLU argue, warrant equal protection analysis.

The first is the distinction between young adjudicated sex offenders, who must register, and other young delinquents, who need not. The ACLU argues that "there is no compelling reason to treat youthful offenders who have been involved in the listed sex offenses differently than other youthful offenders. Both are deemed rehabilitated and non-dangerous, have no convictions under HYTA and are supposed to be able to keep their criminal histories out of the public domain." Br. of ACLU 23.

The second distinction is between the "Romeo and Juliet" offenders adjudicated for acts occurring before October 1, 2004, and those adjudicated for acts occurring after that date. The ACLU points out that "[w]hen the underlying offense is identical, there can be no rational reason for requiring those who become trainees for the same crimes committed

before October 1, 2004 to register for a lengthy period when the legislators did not see fit to make the more recent (and arguably more dangerous) wrongdoers of the same type do so." *Id.*

Unless legislation distinguishes between people on the basis of a suspect classification, such as race, alienage, national origin, or gender, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440. Because neither of the above distinctions concerns a suspect classification, rational basis review applies to both.

D.  Rational Basis Review

Under the rational basis test, a statute is constitutional as long as "there is any reasonably conceivable state of facts that could provide a rational basis" for it. *FCC v. Beach Communications*, 508 U.S. 307, 313 (1993). Here, Defendants provide a sound rationale for the statue:

> [T]he registration requirements of the Michigan SORA, and the inclusion of those individuals assigned to youthful trainee status, exist to address what is a public safety issue.  The registration and, more specifically, the quarterly verification requirements . . . are rationally related to the legislative purpose of the Act, providing current, up-to-date information about "convicted" sex offenders in one organized location fo ruse by law enforcement and the public.

Br. of Defs. 25.  This explanation survives rational basis review as it applies to the general application of SORA to HYTA trainees.

The distinction between pre- and post- October 1, 2004 "Romeo and Juliet" offenders is somewhat more difficult to justify.  Defendants stated at oral argument that the distinction puts courts on notice of the change in law, and gives them the opportunity to look at the

14

recidivism of particular pre-2004 offenders before giving them the same benefits of post-2004 offenders. Defendants contend that whatever might be said of the soundness of these policy decisions, it is the province of the legislature to draw lines such as this. The Court agrees. The Michigan legislature is not required to bestow this newly recognized benefit upon all past offenders. Defendants have met the low threshold of rational basis review.

IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above and on the record, the Court hereby GRANTS Defendants' Motion to Dismiss or for Summary Judgment.

                                                  s/Nancy G. Edmunds
                                                  Nancy G. Edmunds
                                                  United States District Judge

Dated: October 25, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 25, 2005, by electronic and/or ordinary mail.

                                                  s/Carol A. Hemeyer
                                                  Case Manager